Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial[1]

| | | |
|---|---|---|
| PUERTO RICO CONSUMER DEBT MANAGEMENT CO., INC.<br>Apelante<br><br>v.<br><br>LUIS R. LOPEZ NORIEGA, Y ESPOSO(A) Y/O PAREJA JOHN (JANE) DOE, Y LA SOCIEDAD LEGAL DE GANANCIALES Y/O COMUNIDAD DE BIENES ENTRE AMBOS<br>Apelada | TA2025AP00714 | Apelación procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm. BY2025CV01547<br><br>Sobre:<br>Cobro de Dinero |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Trigo Ferraiuoli, jueza ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de junio de 2026.

Comparece el Sr. Luis R. López Noriega (López Noriega o apelante), a través de recurso de *apelación*, y solicita que revoquemos la *Sentencia* en rebeldía emitida el 6 de octubre de 2025, notificada el 10 de octubre de 2025, por el Tribunal de Primera Instancia, Sala de Bayamón (TPI). En esta, el foro primario declaró *Con Lugar* la demanda de cobro de dinero instada por Puerto Rico Consumer Debt Management Co., Inc. (CDM o apelado). En consecuencia, ordenó a López Noriega el pago de las sumas reclamadas en la demanda y honorarios de abogado.

El 18 de febrero de 2026, CDM presentó *Alegato de la Parte Apelada[2]*.

Evaluado el recurso, así como el alegato en oposición de la parte apelada, y por los fundamentos que expondremos a continuación, se confirma el dictamen apelado.

---

[1] Mediante Orden Administrativa DJ-2025-063B emitida el 20 de abril de 2026 se enmendó la composición de los paneles.
[2] Entrada 5 SUMAC TA.

## I. Trasfondo fáctico y procesal

El 26 de marzo de 2025, CDM, en representación de Jefferson Capital Systems, LLC (JCS), presentó una *Demanda*[3] sobre cobro de dinero en contra de López Noriega y otros[4]. En esta expuso que era una agencia de cobros contratada por JCS y que López Noriega suscribió un contrato de arrendamiento financiero con Popular Auto Inc. (Popular Auto) como acreedor original. Añadió que, luego de que López Noriega firmara el contrato, dejó de emitir los pagos mensuales pactados.

CDM expuso que, posteriormente, Popular Auto le transfirió todos los derechos, títulos e intereses de dicha deuda a JCS. En apoyo de dicha alegación, CDM acompañó varios documentos, a saber: *Limited Power of Attorney* otorgado por JCS a favor de CDM; *Bill of Sale* del cual se desprende que Popular Auto, Inc. cedió a JCS varias cuentas que no se especifican; el Contrato de Arrendamiento entre Popular Auto, Inc. y López Noriega; una carta del 16 de enero de 2025 en la que CDM le notificó al apelante sobre la adquisición de la cuenta y le hizo requerimiento formal de pago y liquidación de la deuda, conforme establece el Artículo 17(13) de la *Ley de Agencias de Cobro*[5]; acuse de recibo de correo certificado y *Track and Confirm* y Licencia Número 151009 expedida por el Departamento de Asuntos del Consumidor (DACo)[6]. Asimismo, incluyó una Declaración Jurada suscrita por el Sr. Nelson M. Santiago López, empleado de CDM, custodio de los expedientes y representante autorizado para comparecer en representación de JCS.

En vista de lo anterior, CDM expresó que, una vez contratado por JCS, y previo a la presentación de la demanda, le requirió al señor López Noriega el pago de lo debido vía correo y llamadas telefónicas, además de ofrecer un plan de pago y/o la posibilidad de saldar la deuda con un descuento y que

---

[3] Entrada 1 SUMAC TPI.

[4] Esposo(a) y/o pareja Jonh (Jane) Doe, y la Sociedad Legal de Gananciales y/o Comunidad de Bienes Entre Ambos. El 6 de octubre de 2025, CDM solicitó el desistimiento en cuanto a Jane Doe, por no haber sido emplazada.

[5] Ley Núm. 143 del 27 de junio de 1968, según enmendada. 10 LPRA § 981a *et seq.*

[6] Conforme expuesto en la demanda, CDM presentó los referidos documentos de conformidad con lo establecido en las Reglas 902(K) y Regla 805 (f) de las de Evidencia y la *Ley de Agencias de Cobro*, Ley Núm. 143 del 27 de junio de 1968, según enmendada.

dichas gestiones resultaron infructuosas. Por ello, le solicitó al TPI que declarara con lugar la demanda y condenara a López Noriega al pago de $52,717.05, en concepto de principal, además de una suma no menor de quinientos dólares $500.00 en honorarios de abogado. López Noriega fue emplazado personalmente el 15 de abril de 2025.

Luego de ciertas incidencias procesales[7], el 6 de octubre de 2025, CDM presentó una *Moción Mostrando Causa, y Solicitando Anotación de Rebeldía y se Dicte Sentencia[8]*, en la cual incluyó el emplazamiento diligenciado de López Noriega y expresó que este no presentó alegación responsiva dentro del término establecido en ley. Por ello, solicitó que se le anotara la rebeldía, se dieran por admitidos los hechos correctamente alegados en la demanda y se dictara sentencia según las alegaciones.

En esa misma fecha, notificada el 10 de octubre de 2025, el TPI le anotó la rebeldía[9] a López Noriega, y emitió la *Sentencia[10]* en rebeldía objeto del presente recurso. En dicho dictamen, el foro apelado detalló la prueba documental presentada por CDM, a saber: (1) declaración jurada del representante de Jefferson Capital Systems, LLC., sobre la validez de la deuda; (2) el contrato de préstamo personal, el pagaré y/o otra evidencia de la deuda; y (3) copia del Documento de Venta de la compra y traspaso de la cuenta a Jefferson Capital Systems, LLC. En virtud de la prueba presentada, el TPI declaró Con Lugar la *Demanda* presentada y, en consecuencia, condenó a López Noriega a pagar a la parte apelada cincuenta y dos mil setecientos diecisiete dólares con cinco centavos ($52,717.05) de principal, más intereses al tipo legal, y siete mil dólares ($7,000.00) en honorarios de abogado.

---

[7] Mediante *Orden* emitida el 2 de octubre de 2025, notificada el 3 de octubre de 2025, el TPI emitió una Orden a CDM para que mostrara causa por las cuales no debía desestimar la demanda por no haberse efectuado trámite alguno durante los últimos seis (6) meses. También le requirió que presentara los emplazamientos diligenciados. Entrada 8 SUMAC TPI. Entrada 8 SUMAC TPI.

[8] Entrada 9 SUMAC TPI.

[9] Entrada 10 SUMAC TPI.

[10] Entrada 11 SUMAC TPI.

El 27 de octubre de 2025, López Noriega compareció por primera vez al TPI, mediante *Moción Asumiendo Representación Legal y Solicitud de Relevo de Sentencia en Rebeldía*[11]. En primer lugar, el apelante expresó que no compareció dentro del término provisto debido a negligencia excusable. Sobre el particular, se limitó a expresar que se encontraba en proceso de contratar representación legal y que debido a un error en la calendarización de los términos no pudo comparecer oportunamente[12]. En segundo lugar, argumentó que le asistía una defensa válida, a saber, que CDM no acreditó fehacientemente que era la titular legítima o cesionaria válida de la deuda objeto de controversia, por lo que esta carecía de legitimación activa para instar el pleito. Por lo anterior, solicitó al TPI que reconsiderara y dejara sin efecto la sentencia en rebeldía y se autorizara la comparecencia de López Noriega para presentar su defensa en los méritos.

El TPI concedió término a CDM para que expresara su posición[13]. El 21 de noviembre de 2025, López Noriega solicitó al TPI que se atendiera la solicitud de reconsideración sin oposición de CDM[14]. El 23 de noviembre de 2025, notificada el 24 de noviembre de 2025, el TPI denegó la moción de reconsideración.

Inconforme, López Noriega acude ante nos, mediante recurso de apelación, y formula los siguientes señalamientos de error:

> **PRIMER ERROR:** Erró el Tribunal de Primera Instancia al dictar y sostener una sentencia en rebeldía a favor de la demandante sin que ésta demostrara ser la titular o cesionaria válida del crédito reclamado, incurriendo así en la adjudicación de una reclamación carente de legitimación activa.

> **SEGUNDO ERROR:** Erró el Tribunal de Primera Instancia al denegar el relevo de la sentencia en rebeldía, a pesar de que la solicitud se fundamentó en la falta de legitimación activa del demandante, defensa sustantiva y dispositiva que justificaba dejar sin efecto la sentencia conforme a las Reglas 45.3 y 49.2 de Procedimiento Civil.

---

[11] Entrada 12 SUMAC TPI.
[12] *Íd.*, pág. 7.
[13] Entrada 13.
[14] Entrada 14.

Ante lo cual, CDM presentó *Alegato en Oposición a Apelación*. Con el beneficio de la comparecencia de las partes, resolvemos.

**II. Exposición de Derecho**

**A. *Legitimación activa***

En nuestro ordenamiento los tribunales solamente pueden entender aquellos casos que son justiciables.[15] Entre otras circunstancias, una controversia no es justiciable cuando, una de las partes carece de legitimación activa.[16] La legitimación activa es la capacidad que se requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante. Esta doctrina tiene como propósito demostrar al foro adjudicador que el interés del demandante en el pleito es de tal índole que, con toda probabilidad, proseguirá su causa de acción de manera vigorosa.[17]

Para demostrar que ostenta legitimación activa, el promovente de una acción tiene que establecer lo siguiente: 1) que ha sufrido un daño claro y palpable; 2) que el referido daño es real inmediato y preciso, y no abstracto o hipotético; 3) que exista una conexión entre el daño sufrido y la causa de acción ejercitada, y 4) que la causa de acción surge al palio de la Constitución o de una ley.[18] Al analizar estos criterios los tribunales deben hacer un análisis de las alegaciones de la manera más favorable y liberal para la parte promovente del pleito.[19] Es decir, cuando se cuestiona la legitimación activa de una parte, los tribunales tienen el deber de asumir que las alegaciones son ciertas y evaluar la causa de acción de la manera más favorable para el demandante.[20]

---

[15] *Ramos Rivera v. García García*, 203 DPR 379,434 (2019); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920 (2011).
[16] *Íd.*
[17] *Sánchez et al. v. Srio. de Justicia* et al., 157 DPR 360 (2002).
[18] *Íd.*
[19] *García Oyola v. JCA*, 142 DPR 532 (1997).
[20] *Col. Peritos Elec. v. A.E.E.*, 150 DPR 327, 332 (2000).

En cuanto a la legitimación activa, la Regla 15.1 de Procedimiento Civil, *infra*, establece que, de ordinario, todo pleito civil debe ser tramitado a nombre de la persona que por ley tenga derecho a lo que se reclama. Ahora bien, a modo de excepción, dispone que:

> [n]o se desestimará un pleito por razón de no haberse tramitado a nombre de la persona que por ley tiene el derecho que se reclama, hasta que, luego de levantarse la objeción, se haya concedido un tiempo razonable para que la persona con derecho ratifique la presentación del pleito, o se una al mismo, o se sustituya en lugar de la parte promovente y tal ratificación, unión o sustitución tendrá el mismo efecto que si el pleito se hubiese incoado por la persona con derecho.[21]

## B. Ley de Agencias de Cobro

La *Ley de Agencias de Cobro[22]*, es una ley especial que regula lo relacionado con la operación de una agencia de cobro en Puerto Rico. A tales efectos, se adoptó el *Reglamento sobre Agencias de Cobro,* Reglamento Núm. 6451 de 2 de mayo de 2002 (Reglamento 6451). El propósito fundamental de ambos preceptos es proteger a los deudores contra las prácticas indeseables de las agencias de cobro en todas las acciones de cobro de dinero.[23]

La Ley de Agencias de Cobro define *agencia de cobro* como cualquier persona dedicada al negocio de cobrar para otro cualquier cuenta, factura o deuda.[24] Con respecto al alcance de operación de tales agencias el Art. 17 dispone, en lo aquí pertinente, lo siguiente:

Art. 17 Prácticas prohibidas

Ninguna agencia de cobros podrá:
(1) Realizar gestiones de cobro en relación con cuentas, facturas, o deudas para las cuales no haya sido previamente autorizado por escrito por el cliente.

(2) Instituir procedimientos judiciales contra un deudor a nombre del cliente sin haber sido previamente autorizado por escrito para ello.

**(13) Radicar acción judicial en cobro de dinero sin antes haber requerido por escrito al deudor para que pague lo adeudado por correo certificado con acuse de recibo. Ningún tribunal podrá asumir jurisdicción en una acción de**

---

[21] 32 LPRA Ap. V, R. 15.1.
[22] Ley Núm. 143 del 27 de junio de 1968, según enmendada, 10 LPRA sec. 981 *et seq.*
[23] *Martínez v. Chase Manhattan Bank,* 108 DPR 515, 523 (1979); *Domínguez Rivera v. Tribunal Superior,* 103 DPR 117, 119–120 (1974); Regla 2 del Reglamento 6451.
[24] Art. 2 (b), Ley Núm. 143-1968, *supra.*

> **cobro de dinero tramitada por una agencia de cobro sin que se alegue y se pruebe el cumplimiento de este requisito.**[25]

De lo anterior se desprende que toda agencia de cobro puede cobrar e instar procedimientos judiciales contra un deudor si puede acreditar que fue previamente autorizado para ello por el acreedor con derecho y que antes de instar la demanda realizó una gestión de cobro mediante correo certificado con acuse de recibo. Conforme establece el inciso (13) del Artículo 17, de no cumplirse con dicho requisito, ningún tribunal podrá asumir jurisdicción.

Por su parte, pertinente a la controversia de autos, el Departamento de Asuntos al Consumidor (DACO), emitió el *Reglamento sobre Agencias de Cobro*, Reglamento Núm. 6451, del 2 de mayo de 2002, (Reglamento Núm. 6451). El mismo, entre otras cosas, dispone cuáles son las prácticas prohibidas para las agencias de cobro. Particularmente, la Regla 16, inciso (17) de dicho reglamento, dispone lo siguiente:

> Las siguientes prácticas quedan prohibidas a las agencias:
>
> .     .     .     .     .     .     .     .
>
> (17) Radicar acción judicial en cobro de dinero sin antes haber requerido por escrito al deudor para que pague lo adeudado por correo certificado con acuse de recibo, según se establece en la Regla 17 de este Reglamento. Ningún Tribunal podrá asumir jurisdicción en una acción de cobro de dinero tramitada por una agencia de cobro sin que se alegue y se pruebe el cumplimiento de este requisito.
>
> .     .     .     .     .     .     .     .

A tales fines, la Regla 17 del Reglamento Núm. 6451 establece lo concerniente al procedimiento de cobro. En lo aquí pertinente, este dispone lo siguiente:

> (a) La agencia se comunicará con el deudor por correo informando en la comunicación que: es una agencia de cobros, incluyendo el nombre, dirección y teléfono de la agencia, que pretende cobrar una deuda, la cantidad de la deuda, el nombre del acreedor y el concepto de la deuda. Debe aclarar que cualquier información que se obtenga durante el proceso será utilizada únicamente para propósitos del cobro de la deuda.
>
> (b) ....
>
> (c) **En la comunicación inicial se debe apercibir al deudor que tiene un término de treinta (30) días, luego del recibo de la**

---

[25] Art. 17, Ley Núm. 143-1968, *supra.* (Énfasis nuestro) La Regla 16 del Reglamento 6451 establece en detalle estas y otras prácticas prohibidas.

**reclamación inicial, para cuestionar la validez de la deuda o parte de ésta, por escrito y que de no hacerlo se entenderá correcta. Se debe informar al deudor que en este término puede solicitar a la agencia de cobros que le provea el nombre y dirección del acreedor original de la deuda, si éste es diferente al actual.**

(d) ...

(e) Si el deudor solicita información, cuestiona o refuta la deuda en el periodo de treinta (30) días antes mencionado, la agencia debe detener toda gestión de cobro hasta tanto notifique al deudor, por escrito, la verificación de la deuda o cumpla con el requerimiento efectuado por el deudor. (Énfasis nuestro).

## C. Las Reglas de Evidencia y la Admisibilidad de los Récords de Negocio (Regla 805(f) y 902(K) de las Reglas de Evidencia)

Prueba de referencia "[e]s una declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado."[26] Como norma general, este tipo de prueba es inadmisible.[27] No obstante, las Reglas de Evidencia reconocen una serie de excepciones a esta regla con el fin de permitir su admisibilidad durante un juicio. Ese es el caso de los récords de actividades de negocio que se realizan con regularidad. Al respecto, la Regla 805 (f) de Evidencia, *supra*, dispone lo siguiente:

"Aun cuando la persona declarante esté disponible como testigo, una declaración no estará sujeta a la regla general de exclusión de prueba de referencia en las siguientes circunstancias:

[...]

(f) Récords de actividades que se realizan con regularidad. — Un escrito, informe, récord, memorando o compilación de datos —en cualquier forma— relativo a actos, sucesos, condiciones, opiniones o diagnósticos que se hayan preparado en o cerca del momento en que éstos surgieron, por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta, si dichos récords se efectuaron en el curso de una actividad de negocios realizada con regularidad, y si la preparación de dicho escrito, informe, récord, memorando o compilación de datos se hizo en el curso regular de dicha actividad de negocio, según lo demuestre el testimonio de su custodio o de alguna otra persona testigo cualificada, o según se demuestre mediante una certificación que cumpla con las disposiciones de la Regla 902(k) o con algún estatuto que permita dicha certificación, a menos que la fuente de información, el método o las circunstancias de su preparación inspiren falta de confiabilidad.

---

[26] Regla 801(c) de Evidencia, 32 LPRA Ap. VI, R. 801(c).
[27] Regla 804 de Evidencia, *supra*. Véase, *Pueblo v. Zeno Torres*, 211 DPR 1 (2022).

El término "negocio", según se utiliza en este inciso, incluye, además de negocio propiamente, una actividad gubernamental y todo tipo de institución, asociación, profesión, ocupación y vocación, con o sin fines de lucro."

Los fundamentos de esta excepción a la regla general de exclusión de prueba de referencia descansan en razones de necesidad, confiabilidad, experiencia y en el carácter rutinario del documento.[28] El texto de la Regla 65 (F) de Evidencia, *supra*, contempla los cuatro (4) requisitos siguientes: (1) que el escrito o récord haya sido hecho durante el curso regular del negocio; (2) que haya sido hecho en o próximo al momento del acto, condición o suceso a que se refiere el récord; (3) que el custodio del escrito o récord, o algún otro testigo, declare sobre su identidad y método de preparación; y (4) que las fuentes de información, método y momento de la preparación del récord sean tales que indiquen su confiabilidad. *Íd.*[29]

Según se desprende del lenguaje de la Regla 65(F) de Evidencia, *supra*, antes de poder admitir en evidencia un documento catalogado como récord de negocio es necesario sentar adecuadamente las bases para su admisión.[30] Para ello, la propia Regla 65(F) de Evidencia, *supra*, requiere, como condición previa a la admisibilidad del documento, el testimonio de un testigo cualificado que testifique sobre los tres (3) requisitos adicionales.[31] Con relación a ello, el profesor E.L. Chiesa Aponte ha explicado lo siguiente:

"La regla categóricamente exige que el custodio del récord u otro testigo competente testifique sobre la identidad del récord y el método de su preparación. La idea es muy clara: exigir testimonio competente que permita al tribunal decidir si se satisfacen los requisitos establecidos en la regla.

[…]

---

[28] *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967, 985 (2010).
[29] A su vez, existen unos factores a considerar en el análisis para determinar la confiabilidad del récord a ser admitido bajo la Regla 805 (f) de Evidencia, *supra*. Dichos factores son los siguientes:

"(1) si la información recopilada es importante para el negocio en cuestión fuera del contexto litigioso en el que se ofrece; (2) si el récord contiene información fáctica relativamente simple y no evaluaciones o conclusiones; (3) si la persona que transmite la información y la persona que practica el asiento son independientes de las partes del pleito; (4) si la información está corroborada por evidencia independiente; (5) si el registro se prepara por una persona con experiencia, y (6) si se verificó la exactitud del mismo." *H.R. Stationery v. E.L.A.*, 119 DPR 129, 137-138 (1987).

[30] *Íd.*
[31] *Íd.*; *H. R. Stationary, Inc. v. E.L.A.*, supra, pág. 139- 140.

> La regla no exige más que un testigo, aunque lo ideal sería que declarara toda persona que contribuyera a establecer los requisitos que exige la regla para la admisión del récord. Pero tampoco se trata de traer a todo participante, pues entonces no habría, tal vez, prueba de referencia que atender. El testimonio del custodio del récord es suficiente pero no necesario. Lo importante es que testifique alguien que conozca como se preparan los récords en el negocio correspondiente, aunque él no haya preparado ni supervisado el récord en controversia. No es necesario que testifique la persona que originó la información. Pero a pesar de la liberalidad con que se interpreta este requisito, su incumplimiento acarrea la exclusión de la evidencia [...]."

Además, de la Regla 65(F) de Evidencia, *supra*, surge que el testimonio de la persona a cargo de su custodia o de alguna otra persona cualificada puede sustituirse por una certificación que cumpla con las disposiciones de la Regla 902(k) de Evidencia, *supra*, o con algún estatuto que permita dicha certificación.

La Regla 902 de Evidencia, *supra*, en general, establece una serie de presunciones de autenticidad. Hay documentos que por su naturaleza son difíciles de alterar o falsificar y, por tanto, se consideran razonablemente como auténticos de su faz. El Inciso (k) de esta Regla permite que un récord de una actividad que se realice con regularidad pueda autenticarse *prima facie* si se acompaña de una declaración jurada de la persona a cargo de su custodia que certifique las exigencias previamente discutidas en cuanto a la autenticidad del documento. En específico, la Regla 902 (k) de Evidencia, *supra*, dispone lo siguiente:

> "No se requerirá evidencia extrínseca de autenticación como condición previa a la admisibilidad de:
>
> (k) Récords certificados de actividades que se realizan con regularidad. — El original o un duplicado de un récord de actividades que se realizan con regularidad dentro de la jurisdicción del Estado Libre Asociado de Puerto Rico y los Estados Unidos de América, el cual sería admisible conforme a la Regla 805(f), si se acompaña de una declaración jurada de la persona a cargo de su custodia o de alguna otra persona cualificada, que certifique que dicho récord:
>
> (1) Se preparó en o cerca del momento en que ocurrieron los sucesos o las actividades mencionadas por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta;
>
> (2) se llevó a cabo en el curso de la actividad realizada con regularidad, y
>
> (3) se preparó como una práctica regular de dicha actividad.

La parte que se proponga someter un récord como evidencia, conforme a lo dispuesto en este inciso, tendrá que notificar por escrito su intención a todas las partes contrarias. Además, tendrá que tener el récord y la declaración jurada disponibles para inspección con suficiente antelación a su presentación como evidencia a fin de brindar a la parte contraria una oportunidad justa para refutarlos."

Esta autenticación *prima facie* se refiere a la preparación de una declaración jurada que exprese detalladamente los hechos que establecen los requisitos necesarios bajo la Regla 805(f) de Evidencia, *supra*, para la admisibilidad de un récord de actividad regular de negocios.[32] Por lo tanto, la declaración jurada no solo establece la autenticidad, sino también la admisibilidad como excepción a la regla general de prueba de referencia debido a que satisface los criterios de dicha regla.[33] La utilización de esta certificación mediante declaración jurada bajo la Regla 902 (K) permite acelerar el proceso de autenticación y admisibilidad de los récords de actividad regular de negocios.[34]

Finalmente, cabe mencionar que se ha resuelto que el testigo que declare no tiene que ser la persona que custodie los récords, pero sí tiene que conocer el método de preparación y la identidad de estos.[35]

**B. Anotación de rebeldía**

El propósito del mecanismo de la rebeldía es desalentar el uso de la dilación como estrategia de litigio.[36] Al respecto, la Regla 45.1 de Procedimiento Civil[37], dispone lo siguiente:

Cuando una parte contra la cual se solicite una sentencia que concede un remedio afirmativo haya dejado de presentar alegaciones o de defenderse en otra forma según se dispone en estas reglas, y este hecho se pruebe mediante declaración jurada o de otro modo, el Secretario anotará su rebeldía.

El tribunal a iniciativa propia o a moción de parte, podrá anotar la rebeldía a cualquier parte conforme a la Regla 34.3(b)(3).

Dicha anotación tendrá el efecto de que se den por admitidas las aseveraciones de las alegaciones afirmativas, sujeto a lo dispuesto en la Regla 45.2(b). [...].[38]

---

[32] R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, 4ta ed., San Juan, Ed. Situm, Inc., 2015, pág. 582.

[33] *Íd.*, págs. 582-583.

[34] *Íd.*, pág. 510.

[35] *Íd.*, pág. 513, citando a *US v. Veytia Bravo*, 603 F.2d. 1187 (1979).

[36] *Rivera Figueroa v. Joe´s European*, 183 DPR 580, 587 (2011).

[37] 32 LPRA Ap. V.

[38] Regla 45.1, 32 LPRA Ap. V.

Según surge de la precitada norma, procede declarar a una parte en rebeldía cuando: no comparece a contestar la demanda después de haber sido debidamente emplazado; no contesta o alega en el término concedido por ley, habiendo comparecido mediante alguna moción previa de donde no surja la intención clara de defenderse; y no cumple con alguna orden del tribunal o se niega a descubrir prueba.[39] Se desprende además que la anotación de rebeldía depende de que se hayan satisfecho los siguientes requisitos: que la parte contra quien se reclama la anotación "haya dejado de presentar alegaciones o de defenderse en otra forma" en el término provisto, y que tal "hecho se pruebe mediante una declaración jurada o de otro modo".[40]

Si bien la anotación de rebeldía tiene como consecuencia jurídica que se estimen aceptados todos los hechos correctamente alegados, un trámite en rebeldía no garantiza, *per se,* una sentencia favorable para el demandante.[41] La parte que solicita un remedio deberá alegar correctamente los hechos específicos los cuales de su faz sean demostrativos que, de ser probados, lo hacen acreedor del remedio reclamado.[42] Además, si para que un tribunal pueda dictar sentencia en rebeldía le es necesario comprobar la veracidad de cualquier alegación o hacer una investigación sobre cualquier otro asunto, deberá celebrar las vistas que estime necesarias y adecuadas.[43] Al respecto la Regla 45.2 (b) de Procedimiento Civil, dispone que será necesario que en un pleito en rebeldía el tribunal celebre vista en la que se presente prueba cuando se requiera: (1) fijar el estado de una cuenta o determinar el importe de daños; (2) comprobar la veracidad de cualquier reclamación mediante prueba; o (3) hacer una investigación de cualquier otro asunto.[44]

---

[39] *Rivera Figueroa v. Joe´s European,* supra, pág. 587-588.
[40] 32 LPRA Ap. V, R. 45.1.
[41] *Continental Ins. Co. v. Isleta Marina,*106 DPR 809 (1978).
[42] *Álamo v. Supermercados Grande, Inc.,* 158 DPR 93 (2002).
[43] *Íd.*
[44] 32 LPRA Ap. V.

En fin, la rebeldía constituye un mecanismo procesal discrecional para el foro de instancia. No obstante, tal discreción no se sostiene ante el ejercicio burdo o injusto.[45] De manera que, la anotación de rebeldía o el dictar sentencia en rebeldía a una parte como sanción por su incumplimiento con una orden del tribunal, siempre debe darse dentro del marco de lo que es justo, y la ausencia de tal justicia equivaldría a un abuso de discreción.[46]

## III. Aplicación del Derecho a los hechos

En esencia, López Noriega plantea que el foro primario erró al dictar una sentencia en rebeldía bajo el argumento de que CDM no demostró ser la titular o cesionaria del crédito reclamado, por lo que se adjudicó la reclamación sin que se acreditara que CDM tenía legitimación activa para presentar la demanda. Basa su argumento en que el *Bill of Sale* no menciona en específico el número de cuenta objeto de la reclamación. Por ello afirma que el TPI erró al denegarle la solicitud de relevo de sentencia fundamentado en la falta de legitimación activa de la agencia.

Por su parte, en su oposición al recurso, CDM afirma que además del *Bill of Sale*, se incluyó la declaración jurada prestada por el custodio de los expedientes y representante autorizado de CDM y que en esta se detalla el número de cuenta objeto de controversia. Añade que el *Bill of Sale* se presentó sin el detalle de todas las cuentas adquiridas en virtud de este, pues son voluminosos y confidenciales[47]. Explicó que el *Bill of Sale* es el contrato firmado por el acreedor original en el que se estipula el precio y cantidad de las cuentas compradas y estas se detallan en un archivo electrónico. Destacó que los documentos presentados en apoyo de la demanda fueron generados por el acreedor original en el curso ordinario de los negocios y que se transmitieron de igual forma a JCS. Además, CDM arguyó que aun cuando el apelante tuvo oportunidad de comparecer, descubrir e impugnar la

---

[45] *Rivera Figueroa v. European Shop*, supra, pág. 589.
[46] *Íd.*; *Díaz v. Tribunal Superior*, 93 DPR 79 (1966).
[47] Al respecto, resulta pertinente señalar que, en efecto, la Regla 16(12) del Reglamento Núm. 6451 establece como prácticas prohibidas el publicar o amenazar publicar una lista de deudores, o divulgar información respecto a la deuda.

evidencia, este se cruzó de brazos por 174 días y ni siquiera solicitó prórroga para anunciar representación legal y presentar su alegación responsiva. Veamos.

Tal cual reseñáramos, en nuestro ordenamiento se favorece que los casos se ventilen en sus méritos. Es por ello que, cuando se cuestiona la legitimación activa de una parte, debemos asumir que las alegaciones de la demanda son ciertas y evaluar la causa de acción de la manera más favorable para el demandante.[48]

De un cuidadoso examen de la totalidad del expediente, surge que, además del *Bill of Sale*, los documentos presentados por CDM junto con su demanda, comprenden documentos que acreditaban la capacidad de esta para representar a Jefferson en Puerto Rico en calidad de agencia de cobro. En apoyo a lo consignado en el *Bill of Sale*, CDM acompañó una declaración jurada suscrita por el representante autorizado *y custodio de los expedientes*, Sr. Nelson M. Santiago López, representante de JCS. Santiago López declaró que, como custodio de los expedientes, revisó los documentos de estos, los cuales eran mantenidos en el curso ordinario de los negocios, y que en virtud del *Bill of Sale and Assignment*, el acreedor original, Popular Auto, Inc., asignó y transfirió a JCS todos los derechos, título e interés "en y a la cuenta número 3246059341 como se evidencia en el "Bill of Sale and Assignment" incluido con la demanda"[49]. Es decir, que la cuenta 3246059341 fue transferida y asignada a JCS por Popular Auto, Inc. por medio de dicho *Bill of Sale and Assignment, y que basado en los archivos de negocio mantenidos en relación con dicha cuenta*, Lopez Noriega adeudaba las sumas reclamadas y que las gestiones de cobro efectuadas resultaron infructuosas[50].

Por consiguiente, el foro primario tuvo ante sí los documentos acreditativos conforme establece la Ley de Agencias de Cobro, así como una declaración jurada suscrita por el representante autorizado y custodio de los

---

[48] *Col. Peritos Elec. v. A.E.E.,* supra.
[49] Véase, Declaración Jurada, Anejo de la Demanda (Entrada Núm. 1 SUMAC TPI).
[50] *Íd.*

expedientes para acreditar la legitimación de CDM para instar la demanda de cobro de dinero. En cuanto a la declaración jurada, el representante y custodio de los expedientes consignó que, entre los expedientes y documentos *mantenidos en el curso ordinario de los negocios* estaba incluida la cuenta a nombre de López Noriega entre las otras cuentas cedidas a JCS en virtud del *Bill of Sale.* No solo eso, la referida declaración jurada hace relación del número de cuenta, así como de la suma adeudada. En vista de lo anterior, asumiendo como ciertas las alegaciones de la demanda y la información que se desprende de los documentos antes mencionados de la forma más favorable a CDM, esta demostró la existencia de la deuda y la legitimación activa para cobrar la acreencia.

Por otro lado, CDM acreditó a satisfacción del foro *a quo* el cumplimiento con la *Ley de Agencias de Cobro* y *Reglamento Sobre Agencias de Cobro,* a saber: que previo a presentar la demanda, a López Noriega se le requirió por escrito, mediante carta fechada el 16 de enero de 2025, el pago de lo adeudado, así como se le apercibió que disponía de un término de treinta (30) días para cuestionar por escrito la validez de la deuda o parte de ésta y que, de no hacerlo, se entendería correcta.

Sin embargo, a pesar de haber sido debidamente notificado, las gestiones de CDM resultaron infructuosas pues el apelante no hizo gestión alguna, ni cuestionó la validez de la deuda, por lo que esta se entiende correcta. Más aun, presentada la demanda y aun después de haber sido debidamente emplazado el 15 de abril de 2025, López Noriega no compareció oportunamente a presentar su alegación responsiva. No es hasta después de transcurridos diecisiete (17) días desde que se dictó sentencia en su contra que este comparece por primera vez, alegando negligencia excusable la cual atribuyó a que se encontraba en proceso de contratar representación legal y que por un error de calendarización de los términos no compareció oportunamente. No nos persuade. El apelante bien pudo informar al tribunal sobre el error o negligencia en la calendarización de los términos para

presentar su alegación responsiva tan pronto advino en conocimiento de este y solicitar prórroga para anunciar su representación legal y presentar su alegación responsiva. López Noriega no presentó documento ni acreditó gestión alguna que justificara las razones para su demora de forma tal que colocara al TPI en posición de reconsiderar su dictamen o conceder el relevo de sentencia. Tampoco presentó prueba en contrario a los fines de impugnar la validez de la documentación sometida por CDM.

Por lo anterior, concluimos que no se cometieron los errores señalados y el foro primario actuó correctamente al denegar la solicitud del apelante de dejar sin efecto la sentencia en rebeldía.

Por consiguiente, procede confirmar el dictamen apelado.

## IV. Parte dispositiva

Por los fundamentos que anteceden, *confirmamos* la sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica su Secretaria. El Juez Adames Soto emitió Voto Disidente.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial[51]

| | | |
|---|---|---|
| PUERTO RICO CONSUMER DEBT MANAGEMENT CO., INC.<br>Apelante<br><br>v.<br><br>LUIS R. LOPEZ NORIEGA, Y ESPOSO(A) Y/O PAREJA JOHN (JANE) DOE, Y LA SOCIEDAD LEGAL DE GANANCIALES Y/O COMUNIDAD DE BIENES ENTRE AMBOS<br>Apelada | TA2025AP00714 | Apelación procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm. BY2025CV01547<br><br>Sobre:<br>Cobro de Dinero |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

### VOTO DISIDENTE DEL JUEZ NERY E. ADAMES SOTO

a.

La Sentencia que hoy suscriben mis respetados compañeros jueces de Panel recoge las incidencias procesales principales y los argumentos de las partes de manera cabal, de modo que resulta innecesario detenerme en ellos, procedo a elucidar las razones para mi disenso.

b.

Inicio por reconocer que, una vez fue debidamente emplazada la parte apelante, sin que esta compareciera a ninguna etapa del proceso judicial llevado a cabo en su contra, sino hasta después de recaída la Sentencia, el foro primario estaba en posición de dictar Sentencia en rebeldía, según lo hizo.

No obstante, es sabido que un trámite en rebeldía no garantiza *per se*, una sentencia favorable al demandante. *Continental Inc. v. Isleta Marina,* 106 DPR 809 (1978). Además, *para que el tribunal descargue su función adjudicativa de un pleito en rebeldía, el proceso de formar conciencia judicial*

---

[51] Mediante Orden Administrativa DJ-2025-063B emitida el 20 de abril de 2026 se enmendó la composición de los paneles.

*exige la comprobación de cualquier aseveración mediante prueba. Álamo v. Supermercado Grande, Inc.,* 158 DPR 53 (2002).

Tomando en consideración la jurisprudencia citada, no hay duda de que en este caso **la Sentencia en rebeldía se dictó en consideración exclusiva de los documentos que acompañó CDM en la Demanda para sustentar sus alegaciones**, prescindiendo el foro recurrido de la celebración de alguna vista para que se pasara prueba sobre algún hecho alegado. Por tanto, siendo esa prueba documental la única que tuvo ante sí el TPI para adjudicar el derecho de las partes, necesariamente **dicha documentación tenía que contener la información completa sobre los elementos esenciales para poder adjudicar la causa de acción**, el cobro de dinero. Sin embargo, contrario a la determinación de hechos tercera de la Sentencia apelada[52], juzgo que la documentación incluida por la parte promovente del cobro de dinero, recurrida de epígrafe, no estableció efectivamente que Popular Auto le cediera la cuenta de los apelantes a JCS.

Sobre ello, nótese que fueron dos los documentos principales de los que se valió CDM en su Demanda para establecer la alegada transferencia de la cuenta de los apelantes por parte de Popular Auto a JCS: 1) una declaración jurada suscrita por el señor Nelson M. Santiago López, representante de JCS, (DJ), y; 2) el *Bill of Sale*[53]. Iniciando con el examen de la DJ, luego de su suscribiente haber afirmado ser representante de JCS, entonces, en lo que nos concierne, aseveró en su inciso cuarto que "el Acreedor Original POPULAR AUTO INC., debidamente **asignó y transfirió a Jefferson Capital Systems, LLC todos los derechos, título e interés en y a la cuenta número 3246059341 <u>como evidencia en el "Bill of Sale and Assignment" incluido con la demanda</u>**"[54]. (Énfasis y subrayado provistos). Es decir, en el inciso cuarto citado de la DJ se refirió al Tribunal para que

---

[52] Entrada Núm. 11 de SUMAC.
[53] Entrada Núm. 1 de SUMAC, ambos documentos fueron incluidos como apéndices de la Demanda. Aclaramos que también se incluyeron otros documentos junto a la Demanda, pero solo aludimos a los pertinentes a la controversia bajo discusión.
[54] Id.

examinara el *Bill of Sale* con el propósito de comprobar o establecer que: 1) Popular Auto había transferido unos derechos crediticios a favor de JCS; 2) que tales derechos referían a **los contenidos en la cuenta 3246059341**. En consecuencia, conviene reproducir aquí el referido *Bill of Sale*[55], para comprobar si de allí surge la información que se dio en la DJ:



De la lectura de la primera oración del *Bill of Sale* surge, sin mayor dificultad, que Popular Auto transfirió unos derechos a JCS. Entonces, seguido de esa oración inicial, en el texto se incluye un inciso (a) que indica que tal transferencia de crédito se daba **respecto a la cuenta contenida en el Exhibit A, según anejada**. (Énfasis provisto). Sin embargo, al verificar la totalidad de los documentos incluidos por CDM en la Demanda como apéndices, **no surge en ninguna parte que se hubiese incluido tal Exhibit A**. Más aún, habiendo examinado la totalidad del expediente judicial electrónico, no hay rastro alguno del mencionado Exhibit A, de modo que ni siquiera conocemos si existe.

Aunque resulte reiterativo, el *Bill of Sale* sí refiere a una transferencia de crédito de Banco Popular a JCS, pero **no** contiene información alguna sobre cuál fue el crédito cedido, de modo que no se precisó o identificó que la cuenta transferida fuera la **3246059341**.

---

[55] *Bill of Sale*, Entrada Núm. 1 de SUMAC. Se trata de una reproducción fiel al documento incluido en SUMAC con idéntico tamaño de la letra.

En consecuencia, la DJ no sirvió el propósito de suplir la información omitida en el *Bill of Sale* sobre el crédito cedido, en tanto **lo allí afirmado bajo juramento se hizo depender del contenido de un documento no incluido, el llamado Exhibit A**. La declaración jurada descansó en el contenido del Bill of Sale para probar la alegada cesión del crédito contenido en la cuenta 3246059341, pero resulta que en ninguna parte de dicho documento ni se menciona la referida cuenta. O sea, la prueba documental no logró conectar el *Bill of Sales* con la cesión de la cuenta **3246059341** en concreto. De esto se sigue que el Tribunal desconoce si el *Bill of Sale* incluido en la Demanda tiene relación con la cuenta que CDM le pretendió cobrar **a los apelantes en particular**.

No pasa por inadvertido que, si permitiéramos que en el *Bill of Sale* no se especifique el número de la cuenta cedida, (o se omita el presunto Exhibit A donde presuntamente fue precisado), CDM podría presentar el mismo *Bill of Sale* una y otra vez contra cualquier otro deudor, pretendiendo también el cobro de otras acreencias, **sin nunca tener que puntualizar o fijar la cuenta específica que se reclama**.

Por lo expuesto, juzgo que la documentación en el expediente del Tribunal resultaba insuficiente para adjudicar la causa de acción presentada, *ergo,* la parte apelante tenía una buena defensa que justificaba que se levantara la anotación de la rebeldía, y de aquí que respetuosamente disienta del curso decisorio elegido por mis compañeros jueces de Panel.

En San Juan, Puerto Rico, a 11 de junio de 2026.


Nery Enoc Adames Soto
Juez de Apelaciones